O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENVIRONMENTAL WORLD WATCH,INC., DENNIS JACKSON, ROBERT HILL, ROBIN McCALL, and WILLIAM McCALL, | ) ) ) ) ) | Case No. CV 09-04045 DDP (PLAx)<br><br>**Order Denying Defendants' Motion to Dismiss** |
| Plaintiffs, | ) ) | [Motion filed on September 3, 2009] |
| v. | ) ) | |
| THE WALT DISNEY COMPANY, WALT DISNEY ENTERPRISES, INC.; DISNEY WORLDWIDE SERVICES, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Presently before the Court is Defendants Walt Disney Company, Disney Worldwide Services, Inc., and Walt Disney Enterprises' (together "Disney") motion to dismiss for lack of standing and for failure to state a claim. After reviewing the parties' moving papers and hearing oral argument, the Court denies the motion.

**I. Background**

Plaintiffs in this action are Environmental World Watch, Inc. ("EWW"), a Delaware corporation based in Los Angeles County, and several individuals that live and recreate in the vicinity of

Disney's commercial property in Burbank, CA.   Disney is a worldwide entertainment company with headquarters located at 500 South Buena Vista Street in Burbank, California (the "Studio Lot").   (Second Amended Complaint ("SAC") ¶ 14.)

According to the SAC, Disney has operated a 50-acre film production, broadcast, and office facility at the 500 South Buena Vista Street Property since approximately 1939.   (SAC, Ex. A at 25.)   Plaintiffs contend that, for decades, Disney has pumped water from the ground for use in its air-cooling system, added various chemical compounds to the cooling waters, and then discharged the spent water through "well water disposal lines" and pipes.   (Id.)   As a result, they contend, Disney has discharged hexavalent chromium ("Cr VI") into the land, water, and air surrounding the Studio Lot.   (Id.)

The SAC alleges that Disney continued to discharge Cr VI even after EPA banned use of the compound in air-cooling systems in 1990, and that discharges occurred regularly over the past five years (i.e., within the applicable statute of limitations period).[1] (Id. at 26.)

According to Plaintiffs, the contaminated cooling water traveled through three pipes and emptied into the street at the intersection of Keystone and Parkside (in Burbank), eventually contaminating the aquifer below the City of Los Angeles's Polliwog Park.   (Id.)   At some point, Plaintiffs contend, those three pipes were connected to a City of Burbank storm drain that runs under the intersection of Keystone and Parkside, immediately east of the 500

---

[1]     The EPA regulations governing the use of Cr VI in cooling systems are codified at 40 C.F.R. § 749.68.

South Buena Vista Street property line, and empties into the Los
Angeles River. (Id. at 29, 35.)

The SAC alleges that testing conducted on May 1, 2009 and
every day thereafter at "the discharge pipe terminus into the Los
Angeles River" revealed that "quantities of Cr VI found in samples
of H20 and H20 sludge as residue exceed the Maximum Contaminant
Level (MCL) for Cr VI in drinking water and the No Significant Risk
Level (NSRL) under Ca Health and Safety Code section 25249.5, et
seq."[2] (Id. at 35 n. 1.)

After sending notices of intent to file suit on May 22, 2009,
June 1, 2009, and June 18, 2009, Plaintiffs sued Disney for
violations of the Resource Conservation and Recovery Act ("RCRA"),
42 U.S.C. § 6901 et seq. and the Clean Water Act ("CWA"), 33 U.S.C.
§ 1251 et seq., pursuant to both statutes' citizen suit provisions.
They filed a first amended complaint on June 23, 2009, (Dkt. No.
4), and pursuant to the parties' stipulation, (Dkt. No 12), a
second amended complaint on August 14, 2009, (Dkt. No 14.)

The SAC alleges that Disney is a past or present generator,
transporter, owner or operator "of a treatment, storage, or
disposal facility, which has contributed or is contributing to the
past or present storage, treatment, transportation, and/or disposal
of any solid or hazardous waste which may present an imminent and
substantial endangerment to health or the environment." (SAC ¶
51); see 42 U.S.C. § 6972(a)(1)(B). They specifically allege the
following: (1) violations of the procedural and substantive

---

[2]    The SAC also alleges that testing conducted at the
Polliwag Park property shows Cr VI contamination in the soil to a
depth of twenty-five feet. (Id. at 26.)

1   requirements of RCRA section 3004, 42 U.S.C. § 6924, (SAC ¶ 56);

2   (2) un-permitted handling, treatment, storage, transportation

3   and/or disposal of hazardous waste pursuant to 42 U.S.C. § 6925

4   (SAC ¶ 64); and (3) violating the prohibition on open dumping

5   pursuant to 42 U.S.C. § 6945 (SAC ¶ 67.)

6   Plaintiffs also allege that Disney is discharging pollutants

7   from a point source without a National Pollutant Discharge

8   Elimination System ("NPDES") permit in violation of CWA § 301, 33

9   U.S.C. § 1311, and that they are discharging storm water

10  contaminated with industrial pollutants in violation of CWA §

11  402(p), 33 U.S.C. § 1342(p).  (SAC ¶¶ 75-76.)

12  Disney moves to dismiss the SAC for failure to state a claim

13  upon which relief can be granted, pursuant to Rule 12(b)(6) of the

14  Federal Rules of Civil Procedure, and for lack of Article III

15  standing.  They contend that "the RCRA causes of action (one

16  through five of the SAC) should be dismissed because Plaintiffs

17  fail to identify a 'hazardous waste' . . . and fail to describe

18  where and when the hazardous waste allegedly was disposed in the

19  last five years."  (Mot. at 3.)

20  With respect to the CWA causes of action (six and seven in the

21  SAC), Disney argues that Plaintiffs "fail to adequately allege

22  discharge of a particular pollutant from a particular point source"

23  and as to count seven, that Disney does not need a NPDES permit in

24  order to discharge storm water because they are covered by the City

25  of Burbank's municipal storm water permit.  (Id.)

26  **II.  Legal Standard**

27  Pursuant to Federal Rule of Procedure Rule 12(b)(6), a

28  complaint is subject to dismissal when the plaintiff's allegations

4

1   fail to state a claim upon which relief can be granted.  When

2   considering a Rule 12(b)(6) motion, courts accept the plaintiff's

3   allegations of material fact as true, and construe the complaint in

4   the light most favorable to the non-moving party.  <u>Cahill v.</u>

5   <u>Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-338 (9th Cir. 1996).

6       In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009), the

7   Supreme Court explained that a court considering a 12(b)(6) motion

8   should first "identify[] pleadings that, because they are no more

9   than conclusions, are not entitled to the assumption of truth."

10  <u>Id.</u>  Next, the court should identify the complaint's "well-pleaded

11  factual allegations, . . . assume their veracity and then determine

12  whether they plausibly give rise to an entitlement to relief."

13  <u>Id.</u>; <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th

14  Cir. 2009) ("In sum, for a complaint to survive a motion to

15  dismiss, the non-conclusory factual content, and reasonable

16  inferences from that content, must be plausibly suggestive of a

17  claim entitling the plaintiff to relief." (internal quotation marks

18  omitted)).

19  **III. Discussion**

20      **A.   Standing**

21      In order to satisfy Article III's standing requirements, a

22  plaintiff must show:

23      (1) it has suffered an injury in fact that is (a) concrete
        and particularized and (b) actual or imminent, not
24      conjectural or hypothetical; (2) the injury is fairly
        traceable to the challenged action of the defendant; and (3)
25      it is likely, as opposed to merely speculative, that the
        injury will be redressed by a favorable decision.
26
    <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S.
27
    167, 180-81 (2000) (internal quotation marks omitted).  At the
28

1  motion to dismiss stage, allegations are presumed to be correct,

2  and thus "general factual allegations of injury resulting from the

3  defendant's conduct may suffice" to establish the prerequisites for

4  standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

5  (1992).

6      "[E]nvironmental plaintiffs adequately allege injury in fact

7  when they aver that they use the affected area and are persons 'for

8  whom the aesthetic and recreational values of the area will be

9  lessened' by the challenged activity." Friends of the Earth, 528

10  U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735

11  (1972)); see also Desert Citizens Against Pollution v. Bisson, 231

12  F.3d 1172, 1176 (9th Cir. 2000) ("We have held repeatedly that

13  environmental and aesthetic injuries constitute injuries in fact

14  for standing purposes.").

15      Plaintiffs submitted declarations from two EWW board members

16  with their Opposition.  Board member William Dunlap states that he

17  lived near the 500 South Buena Vista Street Property in 2006 when

18  the contamination in Polliwog Park was discovered, and that he has

19  regularly walked, exercised, and ridden his horse in the vicinity

20  of the alleged Cr VI contamination.  The Court concludes that

21  Dunlap's allegations are sufficient to confer standing.  See

22  Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 255

23  (3d Cir. 2005) (RCRA plaintiffs satisfied injury in fact

24  requirement where they alleged that they lived near former site of

25  chromium manufacturing and were concerned about health risks caused

26  by exposure to Cr VI from the site).

27      Because EWW has alleged that one of its members has suffered

28  an injury in fact sufficient to confer Article III standing, the

1    Court concludes that the organization itself has established

2    standing.  See Friends of the Earth, 528 U.S. at 181 (noting that

3    an organization has standing to bring suit on behalf of its members

4    where members could sue in their own right, the interests involved

5    are germane to the organization's purpose, and the requested relief

6    does not require the participation of individual members in the

7    suit).

8        **B.   RCRA**

9        The Court concludes that Plaintiffs have alleged facts

10   plausibly suggesting that Disney has disposed of a "hazardous

11   waste" within the meaning of RCRA.  The facts alleged, taken as

12   true, suggest that Disney released Cr VI from the 500 South Buena

13   Vista Street Property.  While Plaintiffs have not conclusively

14   proved that the alleged Cr VI discharges are of a sufficient

15   concentration to qualify as hazardous under EPA's regulatory

16   definition, they are not required to do so at the pleading stage.

17       RCRA "is a comprehensive environmental statute that empowers

18   EPA to regulate hazardous wastes from cradle to grave, in

19   accordance with . . . rigorous safeguards and waste management

20   procedures."  Chicago v. Envtl. Def. Fund, 511 U.S. 328, 331

21   (1994).

22       RCRA defines the term "hazardous waste," in relevant part, as:

23       [A] solid waste, or combination of solid wastes, which
         because of its quantity, concentration, or physical,
24       chemical, or infectious characteristics may cause, or
         significantly contribute to an increase in mortality or an
25       increase in serious irreversible, or incapacitating
         reversible, illness . . . or pose a substantial present or
26       potential hazard to human health or the environment when
         improperly treated, stored, transported, or disposed of, or
27       otherwise managed.

28

                                    7

1  42 U.S.C. § 6903(5).[3]

2     The Act requires EPA to regulate the identification, disposal,

3  and treatment of hazardous waste, and directs the EPA Administrator

4  to "promulgate regulations identifying the characteristics of

5  hazardous waste, and listing particular hazardous wastes (within

6  the meaning of section 6903(5) of this title), which shall be

7  subject to the provisions of this subchapter."  42 U.S.C. §

8  6921(b)(1).  Pursuant to § 6921, EPA may deem wastes hazardous if:

> They possess one of the four hazardous characteristics
> identified by the EPA in 40 C.F.R. Part 261, Subpart C
> ("characteristic wastes"), see id. § 261.3(a)(2)(I) (1991),
> or have been found to be hazardous as a result of an EPA
> rulemaking.  See id. Part 261, Subpart D ("listed wastes").

12  Chem. Waste Mgmt., Inc. v. EPA, 976 F.2d 2, 7-8 (D.C. Cir. 1992).

13  EPA's regulations provide that solid waste containing chromium is

14  "hazardous waste," within the meaning of RCRA, where the chromium

15  concentration exceeds 5 mg/L (which is equivalent to 5 parts per

16  million ("ppm") or 5,000 parts per billion ("ppb")).[4]  40 C.F.R. §

17  261.24.

18     Disney "do[es] not dispute that waste containing a

19  sufficiently high concentration of Cr VI could potentially be

---

[3]     "Disposal," within the meaning of the Act, amounts to "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land . . . so that such solid waste or hazardous waste or any constituent thereof may enter the environment . . . ."  40 C.F.R. § 260.10.

[4]     Chromium occurs in the environment primarily in two valence states, trivalent chromium and ("Cr III") and hexavalent chromium ("Cr VI").  See U.S. EPA, Technology Transfer Network, Chromium Compounds Fact Sheet, available at http://www.epa.gov/ttn/atw/hlthef/chromium.html (last updated November 6, 2007).  Inhaled Cr VI is a known human carcinogen, Cr III is believed to be much less toxic.  (Id.)  Because it is difficult to differentiate between Cr VI and Cr III, tests in nature generally measure total chromium.  (Id.)

1  considered a hazardous waste under RCRA." (Defs.' Reply at 3.)  It

2  contends, however, that Plaintiffs have not alleged facts

3  suggesting that Disney discharged waste containing a Cr VI

4  concentration that exceeds EPA's toxicity threshold.

5       The Court disagrees.

6       Under Iqbal, the Court must first dispatch the allegations

7  contained within the SAC that do nothing more than state a legal

8  conclusion, and then evaluate the remaining factual content to

9  determine whether the SAC states a RCRA claim that is plausible on

10  its face.  Cf. Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 683

11  (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart

12  exercised control over their day-to-day employment is a conclusion,

13  not a factual allegation stated with any specificity. We need not

14  accept Plaintiffs' unwarranted conclusion in reviewing a motion to

15  dismiss.")  Accordingly, the Court assigns no weight to Plaintiffs'

16  conclusory recitations of the elements of a RCRA claim.  (See,

17  e.g., SAC ¶ 30.) ("DEFENDANTS have discharged or are intentionally

18  and illegally continuing to discharge hazardous waste in violation

19  of RCRA and the CWA.")

20       The SAC, however, consists of more than just conclusory

21  assertions – it states specific facts that the Court must assume

22  are true.  Plaintiffs contend that Disney continues to add Cr VI to

23  the water it uses in its air cooling system (in spite of the EPA

24  ban) and that the spent water is being discharged into the Los

25  Angeles River through a particular storm drain pipe, the location

26  of which is identified in the SAC.[5]  They further allege that

27  _____

28       [5]    In a footnote in Plaintiffs' Opposition, they contend
                                                    (continued...)

9

1  testing at the terminus of the storm drain at issue revealed Cr VI

2  concentrations that exceed California's water quality standards.

3     Taking these facts together, and drawing all reasonable

4  inferences in Plaintiffs' favor, the SAC plausibly suggests that

5  Disney disposed of Cr VI in a concentration that would render it a

6  hazardous waste within the meaning of RCRA.

7     Disney points out that California's water quality standards

8  with respect to chromium are far more stringent than the federal

9  standard.[6]  RCRA does not authorize citizen suits predicated on

10  violations of state standards that are more stringent then the

11  applicable federal standard.  See Ashoff v. Ukiah, 130 F.3d 409,

12  412 (9th Cir. 1997).  Thus, a waste cannot be deemed hazardous,

13  within the meaning of RCRA, solely because it contains a chromium

14  concentration that violates California's water quality standards.

15     Even so, Plaintiffs are not required to prove that Disney is

16  disposing of a specific concentration of Cr VI at the pleading

17  stage – they need only plead facts that plausibly suggest a Cr VI

18  release that exceeds the federal standard.  Plaintiffs discovery of

19  Cr VI at a storm drain terminus that, they allege, deposits waste

20

21     [5](...continued)

22  that "[i]n addition to hexavalent chromium Plaintiffs have alleged
    that hazardous solvents including TCE, PCE and other toxic metals
23  such as mercury . . . are being discharged by Disney." (Opp. at
    10, n. 5.)  Plaintiffs provide no factual allegations to support
24  their assertion that Disney is discharging "TCE, PCE and other
    toxic metals such as mercury" from the 500 South Buena Vista Street
25  Property.  Accordingly, the Court concludes that the SAC's
    allegations regarding chemicals other than Cr VI are conclusory,
26  and therefore not entitled to any presumption of truth.

27     [6]    The California Maximum Contaminant Level for chromium is
    50 micrograms-per liter (which is equivalent to 50 ppb) – far less
28  than the 5,000 ppb of chromium required to make a waste hazardous
    under 40 C.F.R. § 261.24.

1  from the Studio Lot, coupled with their allegation that Disney

2  continues to use Cr VI in its air-cooling system (in violation of

3  federal law), is sufficient to state a claim under RCRA.

4      **C.   CWA**

5      Plaintiffs contend that Disney is discharging pollutants from

6  a point source without an NPDES permit in violation of CWA § 301,

7  33 U.S.C. § 1311, (SAC ¶ 72), and that it is discharging storm

8  water contaminated with industrial pollutants in violation of CWA §

9  402(p), 33 U.S.C. § 1342(p), (SAC ¶¶ 75-76).

10     In order to state a prima facie case under § 301, Plaintiffs

11  must allege facts suggesting that Disney: (1) discharged (2) a

12  pollutant (3) from a point source (4) to navigable waters (5)

13  without an NPDES permit.  See <u>Comm. to Save Mokelumne River v. E.</u>

14  <u>Bay Mun. Util. Dist.</u>, 13 F.3d 305, 309 (9th Cir. 1993).

15     The Court concludes that Plaintiffs have stated a § 301 claim.

16  Disney contends that Plaintiffs have not identified discharges of a

17  specific pollutant from a particular point source, but as the Court

18  explains above in its discussion of Plaintiffs' RCRA claims, they

19  have adequately so alleged.   The SAC states facts suggesting that

20  Disney's facility is a point source within the meaning of the CWA,

21  and that it discharged a pollutant (i.e., Cr VI) from the

22  facility's air-cooling system into navigable waters without a NPDES

23  permit.

24     With respect to Plaintiffs' CWA § 402(p) claim, Disney

25  contends that it does not need a permit to discharge storm water

26  containing Cr VI because the operative municipal storm water and

27

28

1   urban runoff permit  – the Los Angeles County MS4 Permit[7] (which

2   includes the City of Burbank) – grants Burbank "adequate legal

3   authority" to "prohibit non-storm water discharges to the storm

4   drain system . . . ."  (Mot. to Dismiss 14.)

5       Disney offers no support for its contention that Burbank's

6   legal authority to prohibit non-storm water discharges, under the

7   terms of the MS4 Permit, <u>forecloses</u> Plaintiffs' claim under the

8   CWA.  Further, the MS4 permit states that "[u]nauthorized non-storm

9   water discharges (even when commingled with storm water) shall be

10  eliminated or covered by a separate NPDES permit." (Silver Decl.,

11  Ex. A at 11.)  Accordingly, the Court concludes that Plaintiffs

12  have stated a claim under § 402(p) of the CWA.

13      **D.   Request for a Stay**

14      Disney asks the Court to stay this case pursuant to Federal

15  Rule of Civil Procedure 41(d), which provides the following:

16      If a plaintiff who previously dismissed an action in any
        court files an action based on or including the same claim
17      against the same defendant, the court: (1) may order the
        plaintiff to pay all or part of the costs of that previous
18      action; and (2) may stay the proceedings until the
        plaintiff has complied.
19
20  Fed. R. Civ. P. 41(d).

21      On January 10, 2007, EWW and several individuals including one

    of the plaintiffs in this action, served Disney with a notice of
22
    violation, alleging that it was discharging wastewater containing
23
    Cr VI from the Studio Lot in violation of California's Proposition
24
    65.  (Defs.' Mot at 4.)  EWW then filed a lawsuit in Los Angeles
25
    Superior Court against Disney on June 1, 2007.  (<u>Id.</u>)  On August
26

27  ─────────────────────

28      [7]   The parties agree that the Court may take judicial notice
    of the MS4 permit.

                                12

1 | 15, 2007, that action was dismissed for failure to file a proof of
2 | service.  (<u>Id.</u>)

3 |      A few months later, on October 29, 2007, EWW filed a second
4 | lawsuit in state court alleging the same claims.  (<u>Id.</u>)  After a
5 | year of active litigation, EWW voluntarily dismissed the case on
6 | November 7, 2008.  (<u>Id.</u>)  On February 5, 2009, the court granted a
7 | judgment of costs in favor of Disney.  (<u>Id.</u> at 5.)  EWW has yet to
8 | satisfy the judgment.  (<u>Id.</u>)

9 |      Disney contends that, because the previously dismissed action
10 | concerned the same claims at issue in this case, the Court should
11 | stay this case until EWW satisfies the judgment of costs entered in
12 | the prior state court action.

13 |      The present case, unlike EWW's prior state court action,
14 | presents claims arising under federal law.  Further, some of the
15 | individual plaintiffs in this action were not party to the previous
16 | lawsuit.  Accordingly, the Court concludes that a stay is not
17 | warranted.

18 | **IV.   Conclusion**

19 |      For the reasons set forth above, the Court DENIES Disney's
20 | Motion to Dismiss.

22 | IT IS SO ORDERED.

25 | Dated: October 19, 2009

DEAN D. PREGERSON
United States District Judge

13