# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ENVIRONMENTAL WORLD WATCH, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE WALT DISNEY COMPANY, et al., <br><br> Defendants. | No. CV 09-4045-DMG (PLAx) <br><br> **ORDER TO SHOW CAUSE** |

On May 11, 2012, defendants The Walt Disney Company, Disney Enterprises, Inc., and Disney Worldwide Services, Inc. ("defendants") filed a motion for sanctions, including terminating sanctions, for discovery abuse and misconduct against plaintiff Environmental World Watch, Inc. ("EWW"), and its current and former officers and directors, including William Dunlap and Dennis Becvar. (Dkt. No. 177). On July 2, 2012, the District Judge issued an order addressing defendants' motion. (Dkt. No. 279). The District Judge denied defendants' motion for terminating sanctions and, among other things, referred the motion to the undersigned Magistrate Judge for a determination as to whether monetary sanctions were appropriate. (Id.).

On August 10, 2012, the Court issued a Report & Recommendation ("R&R") recommending that the District Judge grant, among other things, sanctions against Dunlap and Becvar in the amounts of $20,000 and $10,000, respectively. (Dkt. No. 308). On August 2, 2013, the District

Judge issued an order adopting the R&R, including the recommended sanctions, with minor revisions. (Dkt. No. 369). Becvar filed an appeal in the Ninth Circuit Court of Appeals, in which he challenged the District Judge's imposition of monetary sanctions on him. On November 13, 2015, the Ninth Circuit vacated the District Judge's order sanctioning Becvar and remanded the matter to the District Court "to make factual findings, before re-imposing any sanction, as to whether Becvar's conduct violated a court order or amounted to bad faith," as required pursuant to Rule 37(b)(1) or (2) of the Federal Rules of Civil Procedure. (Dkt. No. 467). On December 11, 2015, the District Judge referred the matter to the undersigned Magistrate Judge "for a report and recommendation on the issue of sanctions as to Dennis Becvar. (Dkt. No. 468).

As discussed in the R&R, if appropriate, this Court may impose sanctions of issue or evidence preclusion pursuant to Rule 37(b)(2)(A)(i)-(ii) and (c)(1). "If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery," Rule 37(b)(2)(A)(i)-(ii) permits the Court to impose sanctions "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Additionally, pursuant to Rule 37(c)(1), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Finally, pursuant to Rule 37(b)(2)(C), the Court must "order the disobedient party, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Moreover, and as also discussed in the R&R, the Court can sanction a non-party under its inherent powers. See, e.g., In re Rainbow Magazine, Inc., 77 F.3d 278, 282 (9th Cir. 1996) (acknowledging that sanctions can be "imposed against a nonparty and nonattorney under the court's inherent powers"); Corder v. Howard Johnson, 53 F.3d 225, 232 (9th Cir. 1995) ("a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to

impose sanctions to curb abusive litigation practices"). The Court's inherent powers come from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotation marks omitted); see also The Sunrider Corp. v. Bountiful Biotech Corp., 2010 WL 4589156, at *6 (C.D. Cal. Nov. 3, 2010). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. This power is "both broader and narrower than [statutory and rule-based] means of imposing sanctions." Id. at 46. It is broader in that it "extends to a full range of litigation abuses and reaches conduct both before the court and beyond the court's confines." Anchondo v. Anderson, 2011 WL 4549279, at *2 (D.N.M. Sept. 29, 2011) (citing Chambers, 501 U.S. at 46, 57). But the power is more narrow in that a finding of "bad faith is required for sanctions under the court's inherent power." Fink v. Gomez, 239 F.3d 989, 993 (9th Cir. 2001); see Chambers, 501 U.S. at 47. In the Ninth Circuit, "bad faith" includes "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Fink, 239 F.3d at 994. "'[T]o be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation; and, (2) substantially participate in the proceedings in which he interfered.'" Bartos v. Pennsylvania, 2010 WL 1816674, at *7 (M.D. Penn. May 5, 2010) (quoting Helmac Products v. Roth, 150 F.R.D. 563, 568 (E.D. Mich. June 15, 1993)); see Anchondo, 2011 WL 4549279, at *4 (quoting Bartos); ANZ Advanced Tech., LLC v. Bush Hog LLC, 2012 WL 715099, at *9 (S.D. Ala. Feb. 7, 2012) (same).

Based on the foregoing, the Court orders Becvar to show cause, **no later than January 18, 2015**, why the conduct discussed in the R&R does not constitute "bad faith," and why that conduct did not violate any court order.

Specifically, the conduct Becvar shall address must include, but is not necessarily limited to, the following:

    (1)    R&R at 5:13-24 (see also R&R at 6:11-7:2): Becvar admitted that (a) he deleted and did not keep reports and emails; (b) he "didn't save" "a lot of the stuff" but instead "threw it away"; and (c) he did not save emails or

3

|   |   |   |
|---|---|---|
|   |   | documents he received from Dunlap and other third parties because they "had no relevant credible evidentiary value to the EWW case" and because documents he received from Dunlap "were of no evidentiary value and frankly useless as evidence in the EWW chrome VI contamination matter"; |
|   | (2) | R&R at 6: Becvar "usually discarded, 'without even reading, any unsolicited, unauthenticated documents received from Mr. Dunlap or others, as such documents had no relevant, credible evidentiary value to the EWW case"; |
|   | (3) | R&R at 10:4-19 and note 7: (a) discovery in this action was described as a "lengthy, difficult, and costly process," which, "at a minimum, has been hindered by the shifting roles of Dunlap, Becvar and Nichols at EWW, among other things," and it appears that Becvar (like Dunlap and Nichols) moved in and out of his position with EWW "based on a desire to avoid being deposed (or to make the taking of depositions more complicated), and/or a desire to avoid the discovery of and liability for his actions"; (b) Becvar, while an EWW officer, was well aware of Dunlap's actions; and (c) Becvar took no steps to disavow any of Dunlap's actions "such as sending an email to him to cease his actions on EWW's behalf, or adminishing [him] that he had no authority to act for EWW"; |
|   | (4) | R&R at 11:1-6: "[Becvar's] response that he did not think he had been asked to search for responsive documents is troubling, especially since defendants' third request for production of documents was served while he was the only officer of EWW and only a few months prior to his deposition. . . . Equally troubling are Mr. Becvar's statements about deleting an email and discarding documents"; |
|   | (5) | R&R at 12:4-18: (a) Becvar wilfully destroyed documents based on his unilateral determination as to what was relevant to this action; (b) Becvar inconsistently asserted both that he did not read documents he received, and that he deleted documents that were "useless" and not relevant to this action and his "recent statements that communications from Dunlap were unsolicited and that Dunlap's actions were unknown to him until after the fact . . . are in direct conflict with the evidence that Dunlap was acting on behalf of EWW with Becvar's knowledge"; (c) Becvar had a duty to preserve all relevant documents once this litigation was filed and failed to do so; and (d) Becvar's "actions are all the more egregious given the fact that he was the officer of the party that instituted these proceedings[,] [t]here is no justification for his conduct, [and] his actions are not harmless (both as to the expense incurred by defendants in searching for deleted documents and the harm to the judicial system) . . ." (citations omitted); and |
|   | (6) | R&R at 12 note 8: Becvar made unbelievable statements disavowing knowledge of Dunlap's actions on behalf of EWW. |

**No later than January 29, 2016**, defendants shall file a reply to Becvar's response to the Order to Show Cause.

DATED: December 18, 2015

                                                   /s/ Paul L. Abrams
                                                   PAUL L. ABRAMS
                                              UNITED STATES MAGISTRATE JUDGE